[Nos. 40689-6-II; 40699-3-II.   Division Two.   September 27, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. SYLVESTER JAMES MAHONE, *Appellant*.

*Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Melody M. Crick, Deputy*, for respondent.

¶1 HUNT, J. — Sylvester James Mahone appeals two consecutive 240-day penalties imposed for four violations of his post-confinement community supervision and community placement portions of sentences for two separate convictions. He argues that former RCW 9.94A.200 (1994) authorized the superior court to impose only a single confinement period of 240 days, based on four consecutive multiple 60-day penalties for the four acts that constituted the violations of both community terms. In his Statement of Additional Grounds (SAG),[1] Mahone alleges several due process violations, all of which fail. Agreeing with Mahone's violation-penalty argument, we vacate the 240-day period of confinement imposed for violating his murder conviction[2] community placement, leave intact the 240-day period of

---

[1] RAP 10.10.

[2] Pierce County Superior Court Cause No. 95-1-01236-3.

confinement imposed for violating his assault conviction[3] community supervision, and remand for correction of the superior court's April 23, 2010 order.

## FACTS

### I. THIRD DEGREE ASSAULT; COMMUNITY SUPERVISION

¶2 On April 7, 1994, the superior court sentenced Sylvester James Mahone to serve 62 days in confinement and 24 months of community supervision[4] under the Department of Corrections (DOC) for his guilty-plea conviction for third degree assault, with credit for 62 days served under Pierce County Superior Court cause number 93-1-04436-6. Mahone reviewed all the "standard and special conditions" of his community supervision, signed "the [DOC] Standard Conditions, Requirements, and Instructions form," and "agreed to abide by" its terms.[5] Clerk's Papers (CP) at 26. One condition to which Mahone agreed was "[n]o use or possession of controlled substances without a valid prescription." CP at 26.

¶3 With credit for time served, Mahone was released to community supervision at the time of his April 7 sentenc-

---

[3] Pierce County Superior Court Cause No. 93-1-04436-6.

[4] Under former RCW 9.94A.383 (1994), in effect at the time of Mahone's sentencing:

> On all sentences of confinement for one year or less, the court may impose up to one year of community supervision. An offender shall be on community supervision as of the date of sentencing. However, during the time for which the offender is in total or partial confinement pursuant to the sentence or a violation of the sentence, the period of community supervision shall toll.

Mahone's April 7, 1994 judgment and sentence form also stated, "Any period of supervision shall be tolled during any period of time the offender is in confinement for any reason." Clerk's Papers (CP) at 21.

" 'Community supervision' means a period of time during which a convicted offender is subject to crime-related prohibitions and other sentence conditions." Former RCW 9.94A.030(7) (1994).

[5] Mahone's judgment and sentence, which his defense counsel had signed, also stated, "Defendant shall comply with all rules, regulations and requirements of the [DOC]." CP at 22.

ing. Five weeks later, on May 12, Mahone tested positive for methamphetamine, cocaine, and marijuana, and on May 17, he tested positive for marijuana. Concluding that he had committed three more non-drug-related violations in addition to his two drug-related ones, the superior court ruled that Mahone had violated his community supervision five times and ordered him to serve 300 days of confinement (60 days per violation).[6]

¶4 On January 31, 1995, Mahone was released from confinement. On February 3, he "reviewed" and "agreed to abide by" all conditions of his judgment and sentence. CP at 44. But on February 21 and 27, his urine sample tested positive for methamphetamine. On May 4, the superior court determined that Mahone had violated his community supervision four times and ordered him to serve 240 days in confinement (60 days per violation).

## II. SECOND DEGREE MURDER; COMMUNITY PLACEMENT

¶5 Meanwhile, on March 14, 1995, the State charged Mahone with second degree murder, to which he pled guilty on September 22. On October 24, the superior court sentenced him to 178 months of confinement, with credit for 244 days served under Pierce County Superior Court cause number 95-1-01236-3.[7] As statutorily required,[8] the supe-

---

[6] Former RCW 9.94A.200 (1994) authorized the superior court to impose a maximum of 60 days of confinement for each community supervision violation.

[7] The trial court did not check either box on the judgment and sentence to indicate whether this sentence would run consecutively to or concurrently with any other sentences.

[8] Under former RCW 9.94A.120(8)(b) (1994),

[w]hen a court sentences a person to a term of total confinement to the custody of the department of corrections for an offense categorized as a . . . serious violent offense committed on or after July 1, 1990, the court shall in addition to other terms of the sentence, sentence the offender to community placement for two years.

" 'Community placement' means that period during which the offender is subject to the conditions of community custody and/or postrelease supervision." Former RCW 9.94A.030(5) (1994).

Community supervision and community placement "are different types of sentences." *In re Postsentence Review of Smith*, 139 Wn. App. 600, 603 n.1, 161 P.3d

rior court also ordered Mahone to serve 24 months of community placement, but it failed to so note on the judgment and sentence form.[9]

¶6 On November 6, the DOC informed the superior court that Mahone's uncompleted 24 months of community supervision for his previous third degree assault conviction had been

> placed on inactive status and will remain as such until released from prison [for his second degree murder conviction]. Upon release, the Office of Community Corrections will re-activate this case and resume community supervision.

CP at 62. Consistent with this DOC order, the superior court docket for Mahone's third degree assault case noted a "notice of inactivation" dated November 14, 1995 (cause number 93-1-04436-6). CP at 63. On August 2, 2009, Mahone was released from prison, where he had been serving the confinement portion of his October 24, 1995

---

483 (2007). Community supervision "is similar to probation, whereby an offender is subject to crime-related prohibitions and other sentence conditions (such as rehabilitation or treatment)." *Smith*, 139 Wn. App. at 603 n.1. Community placement, in contrast, comes in two forms: community custody or postrelease supervision. *Smith*, 139 Wn. App. at 603 n.1. " 'Community custody' is a portion of an offender's confinement (in lieu of earned release time or imposed by the court) served in the community while the offender is monitored by DOC." *Smith*, 139 Wn. App. at 603 n.1 (citing former RCW 9.94A.030(5)).

[9] Nearly 10 years after Mahone's sentence for second degree murder, the State moved to correct the "obvious oversight and clerical omission" of the community placement order from the judgment and sentence in cause number 95-1-01236-3. CP at 308. On November 18, 2005, the superior court ordered correction of the October 24, 1995 judgment and sentence, stating that "the [c]ommunity [p]lacement box should be checked specifying that the duration of the defendant's community placement be for two years is inserted in its stead." CP at 374.

Disputing the superior court's correction, Mahone appealed. In an unpublished opinion, we affirmed the superior court's correction, noting that "[t]he transcript from Mahone's 1995 sentencing hearing clearly set[ ] forth the trial court's intention to impose the mandatory 24-month period of community placement" and holding that "[t]he trial court did not err in amending Mahone's judgment and sentence to include community placement." CP at 388-89, 457-64; *see also State v. Mahone*, noted at 135 Wn. App. 1033, 2006 WL 3088427, at *1, 2006 Wash. App. LEXIS 2400, at *3.

second degree murder sentence.[10] This release from prison apparently reactivated his uncompleted community supervision for his third degree assault conviction.

### III. REACTIVATED THIRD DEGREE ASSAULT COMMUNITY SUPERVISION VIOLATIONS

¶7 In late March 2010, Mahone tested positive for controlled substances in two urinalysis samples, and he twice failed to follow his Global Positioning Satellite "GPS" instructions.[11] On April 23, the superior court ordered Mahone to serve 240 days of confinement for committing four violations of his third degree assault conviction community supervision (60 days per violation).

¶8 Based on the same positive urinalyses, however, the superior court also ordered Mahone to serve an additional 240 days of confinement for violating his second degree murder conviction community placement (60 more days for each of the same violations). The superior court ordered Mahone to serve these two 240-day confinement terms consecutively, for a total of 480 days of confinement for the four drug violations.

¶9 Mahone appeals the superior court's imposition of these two consecutive confinement terms.

### ANALYSIS

#### CONFINEMENT FOR COMMUNITY PLACEMENT VIOLATIONS

¶10 Mahone argues that the superior court lacked authority to impose two consecutive 240-day periods of con-

---

[10] Although the record does not contain the exact date of Mahone's release from prison, he asserts that he was released on August 2, 2009. *See* SAG, Cover Letter at 2. Consistent with this assertion, during a colloquy with the superior court at an April 23, 2010 hearing, Mahone's counsel stated that Mahone had been released in August 2009. The State does not dispute either of these assertions.

[11] Mahone signed an agreement with the DOC that "placed [him] on GPS as a matter of dealing with his whereabouts." Verbatim Report of Proceedings (VRP) (Apr., 23, 2010) at 5-6. Apparently, Mahone violated the terms of his "GPS" condition by failing to keep the "GPS unit" "charged." VRP (Apr. 23, 2010) at 6.

finement for his four violations in 2010 and, instead, had authority to impose only a single 240-day period of confinement (one 60-day period for each of his four violations). We agree.

¶11 The plain language of RCW 9.94A.589(2)(a) allows multiple sentences of community terms to run only consecutively:

> Except as provided in (b) of this subsection, whenever a person while under sentence for conviction of a felony commits another felony and is sentenced to another term of confinement, the latter term shall not begin until expiration of all prior terms.

Additionally, RCW 9.94B.040(1) and (3)(c) read, "If an offender violates any condition or requirement of a sentence, the court may modify its order of judgment and sentence and impose further punishment" by "order[ing] the offender to be confined for a period not to exceed sixty days for *each violation*." (Emphasis added.)[12] We " 'assume the Legislature means exactly what it says.' " *Berger v. Sonneland*, 144 Wn.2d 91, 105, 26 P.3d 257 (2001) (quoting

---

[12] Mahone argues that *State v. Taplin*, 55 Wn. App. 668, 669, 779 P.2d 1151 (1989), controls because (1) Taplin pled guilty under two different cause numbers; (2) the superior court entered separate judgment and sentences for each cause number but ran the sentences concurrently; (3) each sentence included 24 months of community supervision; (4) less than a year later, the superior court concluded that Taplin had committed two violations of the community supervision terms, two violations for each cause number; and (5) the superior court imposed a 60-day period of confinement for each of two violations in both cause numbers, which amounted to four violations and a total of 240 days of confinement.

Taplin appealed, arguing that the superior court lacked authority to impose two periods of confinement for each violation. *Taplin*, 55 Wn. App. at 670. Division One of our court agreed, holding that (1) former RCW 9.94A.200 (1989) (*recodified as* RCW 9.94B.040) "is not ambiguous," and "[t]he clear focus of the section is on each violation; not on each sentence," *Taplin*, 55 Wn. App. at 670 (internal quotation marks omitted); and (2) "[h]ere, there were only two violations of conditions of Taplin's sentences and, therefore, the trial court may not impose more than 120 days of confinement." *Taplin*, 55 Wn. App. at 670-71.

We agree with Mahone that *Taplin* would control if Mahone had two concurrent sentences running at the time of his violations. But the sentencing court did not run Mahone's sentences concurrently; on the contrary, only one sentence was in effect at the time he committed his community supervision violations. Thus, *Taplin* does not apply.

*W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 609, 998 P.2d 884 (2000)). Reading these two statutory provisions together to give effect to both,[13] a court may impose further punishment for violations of only the community term that the defendant was actually serving at the time of the violations.

¶12 The State asserts that under RCW 9.94A.589(2)(a), the superior court had authority to impose terms of confinement for Mahone's violations of the community sentence components of both sentences (assault, cause number 93-1-04436-6, and murder, cause number 95-1-01236-3) and to run these violation terms consecutively because Mahone was serving the community supervision portion of his assault sentence when he committed "another felony," the second degree murder. Br. of Resp't at 3 (quoting RCW 9.94A.589(2)(a)). We disagree.

¶13 Mahone was sentenced for his third degree assault conviction on April 7, 1994. After serving the confinement portion of this sentence, he was released to begin serving the community supervision portion of this sentence. When Mahone violated his community supervision in 1994, and again in 1995, however, former RCW 9.94A.383 (1994)[14] tolled the community supervision portion of his assault sentence while he served time for his violations—300 days of confinement, beginning August 11, 1994, and 240 days of confinement, beginning May 4, 1995. Thus, when Mahone committed second degree murder on March 11, 1995 (less than a year after his release from confinement to commu-

---

[13] *See State v. Rice*, 159 Wn. App. 545, 564, 246 P.3d 234 (2011) ("We read provisions of a statute together to determine the legislative intent underlying the entire statutory scheme to achieve a harmonious and unified statutory scheme."), *petition for review filed*, No. 85893-4 (Wash. Apr. 19, 2011).

[14] Former RCW 9.94A.383 (1994) provided that "during the time for which the offender [was] in total or partial confinement pursuant to the sentence or a violation of the sentence, the period of community supervision shall toll."

nity supervision for his assault sentence),[15] he had not completed his two years of community supervision for his earlier assault conviction.[16]

¶14 Accordingly, when on August 2, 2009 Mahone was released from confinement on his murder sentence (cause number 95-1-01236-3), he first had to serve the remainder of the community supervision portion of his assault sentence (cause number 93-1-04436-6). Under RCW 9.94A-.589(2)(a), this unfinished community supervision component had to "expire[ ]" before the community placement portion of his murder sentence could begin. Mahone had not completed this unfinished community supervision of his assault sentence, nor had he even begun to serve the community placement portion of his murder sentence when he committed the four violations in March 2010 at issue here. Therefore, on April 23, 2010, the superior court had authority to impose 60-day confinement terms for Mahone's violations of only his pending assault conviction community supervision (cause number 93-1-04436-6); the statute did not authorize the court to impose identical terms for violating his murder conviction community placement (cause number 95-1-01236-3), which had not yet begun and would not begin until Mahone completed the community supervision portion of his sentence for the earlier assault conviction.

¶15 Thus, we vacate the 240-day term of confinement that the superior court imposed on April 23, 2010 for Mahone's four community placement violations in cause

---

[15] Mahone was serving 300 days of confinement beginning on August 11, 1994, which would have ended by February 11, 1995. The State alleged that Mahone committed the murder on March 11, 1995. Thus, it appears that Mahone committed the murder about a month after completing the confinement terms for violating his community supervision on the earlier assault conviction and was once again on community supervision.

[16] Mahone's two years of community supervision for the assault had been tolled for over a total of 540 days while he served multiple confinement terms for his community supervision violations. Mahone's community supervision was tolled yet again while he served 14 years of confinement for his second degree murder conviction, between October 1995 and August 2009. *See* CP at 62-63.

number 95-1-01236-3 (murder).[17] We remand to the superior court to correct its April 23, 2010 order accordingly.

¶16 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PENOYAR, C.J., and WORSWICK, J., concur.

Review denied at 173 Wn.2d 1015 (2012).

---

[17] Absent some other intervening circumstance, under RCW 9.94A.589(2)(a), Mahone's 24 months of community placement for his murder conviction (cause number 95-1-01236-3) will not begin to run until after he completes the community supervision component of his assault conviction sentence (cause number 93-1-04436-6).