IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30466-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOE ANTHONY MATA, | ) | OPINION PUBLISHED IN PART |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J.—Joe Mata appeals his convictions of robbery, attempted robbery, and first degree unlawful possession of a firearm. We conclude that this second prosecution for unlawful possession of a .45 caliber handgun violates his right to be free of double jeopardy and reverse his conviction on that count. We find no other reversible error nor does Mr. Mata raise any viable issue in his pro se statement of additional grounds. We reverse his conviction of unlawful possession of a firearm and remand for resentencing.

FACTS AND PROCEDURAL BACKGROUND

On July 28, 2009, roughly six weeks after his release from custody on other charges, Joe Mata embarked on a one-day, multi-county crime spree. He was charged

with crimes in Yakima and Pierce Counties. The Yakima County charges and convictions are the subject matter of this appeal.

The crimes allegedly began with Mr. Mata's early morning theft, in Yakima, of a 1993 Dodge Caravan belonging to Luz Garcia, bearing the license plate 864-ROW. Mid-morning, the manager of a restaurant in Union Gap reported to the county sheriff that a man and woman left his restaurant without paying. Responding officers were told that the couple left in what a witness described as a Ford Aerostar van, license plate 664-ROD. At 10:40 a.m., a Yakima County sheriff's deputy responded to a robbery not far from the restaurant, reported by Zachary Sisneros. Mr. Sisneros had been working, delivering bottled water, when a maroon Dodge Caravan with the license plate 860-ROW blocked his truck in the driveway of a residence on his route. The driver of the van robbed him at gunpoint, taking his money, wallet, and his cell phone. Mr. Sisneros's description of the robber was similar to the description of the man who had left the restaurant without paying. Mr. Sisneros believed the gun was a .40 or .45 caliber semiautomatic pistol.

At around 6:30 p.m., another armed robbery was reported by Shaun Kroeger and Jacob McDonald. They had been shopping for groceries in Yakima and were returning to Mr. McDonald's pickup truck when a man confronted Mr. Kroeger as he was getting into the truck, demanding "everything you got." Report of Proceedings (RP) (Oct. 17, 2011) at 541. The man flashed a gun and threatened to kill Mr. Kroeger if he did not hand over

2

his wallet; Mr. Kroeger complied. As he did, Mr. McDonald, who had gotten out of the truck to see what was going on, saw Mr. Kroger hand over his wallet and saw a gun in the robber's hand, pointed to the ground. The robber demanded Mr. McDonald's money as well, but Mr. McDonald refused and walked away. After the robber ran off, the two men called the police and reported the incident, describing the robber's vehicle as a red van with the license plate 864-ROW. Mr. Kroeger's description of the man who robbed him was similar to Mr. Sisneros's description of the robber who confronted him earlier in the day.

Later that night, at 11:15 p.m., Deputy Robert Glen Carpenter of the Pierce County Sheriff's Office was running routine license plate checks of traffic leaving State Route 512. He ran a plate on a maroon van with license plate 864-ROW and received an NCIC[1] hit stating the vehicle was stolen and the subjects should be considered armed and dangerous.

Deputy Carpenter caught up with the van, which was being driven by Mr. Mata, with Christina Barrientes a passenger. As Deputy Carpenter and officers in another patrol car activated their lights, Mr. Mata ran a red light, sped away, and a high-speed chase ensued. It ended when Mr. Mata crashed through a fence on a dead-end road, got

---

[1] National Crime Information Center.

out of the van, and ran. Deputy Carpenter captured and arrested Mr. Mata with the help of employees in a building in which Mr. Mata attempted to hide.

A later search of the van led to the discovery of a loaded .45 caliber handgun, found on the driver's side floorboard. Also found were two wallets, one belonging to Mr. Kroeger; Mr. Sisneros's cell phone; and ignition parts along with a screwdriver.

A records check conducted on the .45 caliber handgun recovered revealed that it had been purchased by Ms. Barrientes on June 5 in Yakima. She picked it up on June 16, at a time when Mr. Mata was in jail for a community custody violation. During the Yakima trial, the State played an audio recording of a telephone call made to Ms. Barrientes by Mr. Mata on June 15, from the county jail, in which he spoke to Ms. Barrientes about purchasing a gun.

Mr. Mata was charged with crimes in both Pierce and Yakima Counties and was tried first in Pierce County. Mr. Mata was prohibited from owning or possessing a firearm in light of his prior conviction of a serious offense, and one of the charges prosecuted in Pierce County was first degree unlawful possession of the .45 caliber handgun found in the Dodge Caravan. The Pierce County jury found him not guilty of that crime.

In Yakima County, the State filed its first information against Mr. Mata on July 31, 2009, charging him with the following counts and enhancements:

4

Count 1: First degree robbery of Zack Sisneros, alleging that "in the commission of or immediate flight therefrom, you displayed what appeared to be a firearm or other deadly weapon." Clerk's Papers (CP) at 1.

Firearm enhancement.

Count 2: First degree unlawful possession of a firearm.

By amended information filed August 8, 2011, the State added additional charges and modified the manner in which it charged Mr. Mata with having displayed or used weapons, as follows:

Count 1: First degree robbery of Zack Sisneros, alleging that "in the commission of or immediate flight therefrom, you were armed with a firearm and/or you displayed what appeared to be a firearm or other deadly weapon." CP at 26.

Firearm enhancement.

Counts 2 and 3: First degree robbery of Shaun Kroeger (count 2) and Jake McDonald (count 3), with allegations of firearm or deadly weapon display or use identical to the allegation in Count One.

Firearm enhancement as to each.

Count 4: First degree unlawful possession of a firearm.

Plus rapid recidivism enhancement under RCW 9.94A.535(3)(t).

Plus exceptional sentence to adjust for "free crimes" under RCW 9.94A.535(2)(c).

By a second amended information filed on October 10, 2011, the day of the pretrial conference in Mr. Mata's Yakima County trial, the State further modified the charges. The prosecutor explained that the State was amending count 3 to attempted first

5

degree robbery, since Mr. Mata demanded Mr. McDonald's wallet but never took property from Mr. McDonald's person. The prosecutor also told the court that the third amended information "cleans up some of the language" to exclude the reference to displaying a deadly weapon. RP (Oct. 10, 2011) at 3. The amendment did more; it also (inadvertently, it appears) eliminated the alternative of Mr. Mata's having been "armed with" a firearm, alleging, in connection with counts 1, 2, and 3, only that

> in the commission of or immediate flight therefrom, you displayed what appeared to be a firearm.

CP at 32-33.

Trial began on October 12. On October 20, the State rested its case. It then asked to amend the information a third time. It explained that the robbery counts should have alleged that Mr. Mata was armed with a firearm "and/or" displayed what appeared to be a firearm or other deadly weapon. RP (Oct. 20, 2011) at 813. Mr. Mata objected. The trial court ultimately ruled that it would allow the amended information if it excluded the "or other deadly weapon" language. *Id.* at 819.

The third amended information therefore modified the manner in which it charged Mr. Mata with having displayed or used weapons by restoring the alternative of being armed, alleging in each of counts 1, 2, and 3 that

> in the commission of or immediate flight therefrom, you were armed with a firearm and/or you displayed what appeared to be a firearm.

CP at 93-94.

6

During trial, Mr. Mata asked the trial court to dismiss the unlawful possession of a firearm count, arguing that he could not be convicted of unlawfully possessing the same firearm that the Pierce County jury had acquitted him of possessing on the date in question. The trial court recognized it as a viable issue and one "wisely brought up by the defense," but concluded that there was a sufficient geographic and temporal gap between possession of the .45 caliber handgun in Yakima and Pierce Counties and denied the motion. RP (Oct. 20, 2011) at 806-07.

The jury found Mr. Mata guilty of the first degree robberies of Mr. Sisneros and Mr. Kroeger and unlawful possession of a firearm. It answered "yes" to the special verdict forms addressing the firearm and rapid recidivism aggravators.

The trial court imposed an exceptional sentence based on the jury's findings and on its own finding that Mr. Mata committed multiple current offenses and his high offender score that resulted in some of the current offenses going unpunished. At the State's request, which was based on RCW 9.94A.589(3), the court ordered that the sentence for the Yakima County crimes run consecutive to Mr. Mata's Pierce County sentence.

Mr. Mata appeals.

7

No. 30466-3-III
*State v. Mata*

## ANALYSIS

Mr. Mata makes four assignments of error[2]: (1) that his conviction of first degree unlawful possession of a firearm violates his constitutional right of protection against double jeopardy, (2) that the trial court violated CrR 2.1(d) and his constitutional right to notice of the charges against him in allowing the State to file the third amended information after resting its case-in-chief, (3) that the trial court erred in ordering that the sentences for his Yakima County convictions run consecutive with his Pierce County conviction, and (4) that the "free crimes" aggravator may not be warranted depending on the outcome of other issues on appeal. We address the assignments of error in turn.

### Double Jeopardy

Mr. Mata first contends that his prosecution in Yakima County for unlawful possession of the firearm discovered in the van in Pierce County violated his right to be free of double jeopardy.

The Fifth Amendment and the Washington State Constitution provide that no person shall be twice put in jeopardy for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. Both constitutional guarantees include protection from being prosecuted a second time for the same offense after acquittal. *State v. Linton*, 156 Wn.2d 777, 783, 132 P.3d 127 (2006).

---

[2] He abandoned a fifth assignment of error, challenging his offender score.

8

The determination of whether or not a defendant faces multiple convictions for the same crime depends on the unit of prosecution. *State v. Hall*, 168 Wn.2d 726, 730, 230 P.3d 1048 (2010) (citing *State v. Westling*, 145 Wn.2d 607, 610, 40 P.3d 669 (2002)). "The unit of prosecution for a crime may be an act or a course of conduct." *State v. Tvedt*, 153 Wn.2d 705, 710, 107 P.3d 728 (2005) (citing *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 225-26, 73 S. Ct. 227, 97 L. Ed. 260 (1952)). "The proper question is to determine what act or course of conduct the legislature has defined as the punishable act." *State v. Varnell*, 162 Wn.2d 165, 168, 170 P.3d 24 (2007). The statutory unit of prosecution is a question of law that we review de novo. *State v. Ose*, 156 Wn.2d 140, 144, 124 P.3d 635 (2005).

The approach to determine the unit of prosecution is well settled:

> [T]he first step is to analyze the statute in question. Next, we review the statute's history. Finally, we perform a factual analysis as to the unit of prosecution because even where the legislature has expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one "unit of prosecution" is present.

*Varnell*, 162 Wn.2d at 168 (citing *State v. Bobic*, 140 Wn.2d 250, 263-66, 996 P.2d 610 (2000)). If the statute is ambiguous as to the unit of prosecution, the rule of lenity applies and the ambiguity must be "'resolved against turning a single transaction into multiple offenses.'" *Tvedt*, 153 Wn.2d at 711 (internal quotation marks omitted) (quoting *State v. Adel*, 136 Wn.2d 629, 635, 965 P.2d 1072 (1998)).

9

Mr. Mata was charged in both Pierce and Yakima Counties under RCW

9.41.040(1)(a), which defines the crime of first degree unlawful possession of a handgun

as follows:

> A person, whether an adult or juvenile, is guilty of the crime of unlawful
> possession of a firearm in the first degree, if the person owns, has in his or
> her possession, or has in his or her control any firearm after having
> previously been convicted . . . in this state or elsewhere of any serious
> offense as defined in this chapter.

The charges in both counties were based on his possession on July 28, 2009 of the .45

caliber handgun found on the floorboard of the Dodge Caravan.

We first analyze the statute. Subsection (1)(a) makes it a crime for a person

convicted of a serious offense to own or have possession of "any" firearm, without tying

the commission of the crime to a particular duration of ownership or possession or to the

location of the firearm. Subsection (7) of the statute provides, "Each firearm unlawfully

possessed under this section shall be a separate offense." RCW 9.41.040(7). Each

firearm therefore constitutes a separate unit of prosecution. *In re Pers. Restraint of

Shale*, 160 Wn.2d 489, 500, 158 P.3d 588 (2007).

Neither the parties nor we have identified any legislative history that would

suggest that the unit of prosecution is anything other than the particular firearm.

The State's position that there might be separate "possessions" of the same firearm

that support separate charges under the statute implicates the third, factual step of the

analysis, in which we determine whether, despite the legislative focus, the facts reveal

10

that more than one "unit of prosecution" is present. The possibility of multiple "possessions" of the same firearm finds support in *State v. Kenyon*, 150 Wn. App. 826, 208 P.3d 1291 (2009), in which Division Two of this court considered the character of the crime of unlawful possession of a firearm in a different context: a defendant's argument that a second prosecution for his unlawful possession of a firearm in 2004 should have been dismissed under CrR 4.3.1 because it was "related" within the meaning of the rule to an earlier prosecution for possessing the same firearm in 2005.

In *Kenyon*, the material facts were summarized in findings by the trial court that were treated as verities on appeal:

> "In this particular case, although the same firearm, identified by its serial number, was possessed on one occasion and allegedly possessed in this case on another occasion, those two time periods are eight months apart. They have intervening time where Mr. Kenyon was incarcerated both in jail and in prison. Certainly this could not be said to be a single criminal incident or episode.
>
> "The allegation is that Mr. Kenyon possessed this firearm, divested himself of it by throwing it out the window, and then at a later time regained it and possessed it again. The Court finds that this is not a situation where the facts amount to a related offense, because it is not a single criminal incident or episode."

150 Wn. App. at 833.

Division Two concluded that the trial court erred in failing to dismiss the second prosecution and in the process made two observations that are relevant to the issue presented here, and with which we agree. First, it stated that "[t]he act upon which these two charges rest—ownership, possession, or control of a single firearm—is a "'course of

11

conduct'" rather than a discrete act because that behavior takes place over a period of time rather than at one distinct moment." *Id.* at 834. At the same time, it regarded the two instances of possession as different offenses when it stated that they "were related and, as such, *should have been charged at the same time.*" *Id.* (emphasis added). Implicitly, the court accepted the trial court's reasoning that the defendant's act of throwing the firearm out the window and regaining possession of it many months later, following a period of incarceration, resulted in a distinct, separately chargeable course of conduct.

Other Washington decisions support the concept that a crime that is defined as a course of conduct can, depending on the facts, be interrupted and committed anew. In *Hall*, the Supreme Court found that a criminal defendant's hundreds of calls to a witness in an effort to dissuade her from testifying constituted a single witness tampering offense, concluding that the witness tampering statute criminalizes the "ongoing" attempt to persuade a witness not to testify. 168 Wn.2d at 733. It stated in dicta that "[o]ur determination might be different if Hall had changed his strategy . . . or if he had been stopped by the State briefly and found a way to resume his witness tampering campaign." *Id.* at 737.

In *State v. Chouap*, 170 Wn. App. 114, 125, 285 P.3d 138 (2012), Division Two, citing this dicta in *Hall*, found the crime of attempting to elude a pursuing police vehicle to be one that a defendant could "commit . . . anew with each pursuit." In *Chouap*, the

12

defendant had attempted to elude law enforcement in two high speed chases: one in Tacoma, involving Tacoma police, and another in Lakewood, involving Lakewood police. The court found two pursuits and two offenses where "the first pursuit ended when the Tacoma police officers stopped pursuing Chouap because of his dangerous driving," and he had thereby "successfully eluded the pursuing police vehicle." *Id.*

We conclude, as did Division Two in *Kenyon*, that the crime of unlawful possession of a firearm is a "course of conduct" rather than a discrete act. We agree that an interruption in possession of a particular firearm may result in different "possessions" just as the interruption of the defendant's effort to elude in *Chouap* resulted in different "pursuits." We need not decide in this case what the duration or character of the interruption would have to be in order to give rise to distinct, separately chargeable unlawful "possessions" of a firearm, however, because the State offered no evidence that Mr. Mata's possession of the .45 caliber handgun on July 28 (at times actual; at others, constructive) was ever interrupted.

"[W]hen a statute defines a crime as a course of conduct over a period of time, 'then it is a continuous offense and any conviction or acquittal based on a portion of that course of action will bar prosecution on the remainder.'" *State v. McReynolds*, 117 Wn. App. 309, 339, 71 P.3d 663 (2003) (quoting *Harrell v. Israel*, 478 F. Supp. 752, 754-55 (E.D. Wis. 1979)). Mr. Mata's acquittal of unlawful possession of the .45 caliber

13

handgun based on a portion of his possession of the firearm on July 28 barred prosecution of the remainder. The unlawful possession conviction must be reversed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with RCW 2.06.040, the rules governing unpublished opinions.

I

Mr. Mata next argues that allowing the State to amend the information for the third time after the State rested violated his rights under the Sixth Amendment to the United States Constitution, article I, section 22 of the Washington State Constitution, and CrR 2.1(d).

CrR 2.1(d) allows the trial court to permit the State to amend an information "at any time before verdict or finding if substantial rights of the defendant are not prejudiced." We review a trial court's decision to allow amendment under the rule for abuse of discretion. *State v. Guttierrez*, 92 Wn. App. 343, 346, 961 P.2d 974 (1998).

If the criminal rule were our only concern, we would find no prejudice to Mr. Mata's substantial rights and no abuse of discretion. All of the evidence presented at trial was that Mr. Mata was armed with a handgun—and what is important here, that he displayed that handgun during the course of both robberies. In *In re Personal Restraint of Brockie*, 178 Wn.2d 532, 309 P.3d 498 (2013) our Supreme Court (although addressing a different issue) recognized that where a defendant is charged with first

14

degree robbery based on the means of "display[ing] what appears to be a firearm or other deadly weapon,"[3] then evidence that he was armed with and displayed his weapon does not present a risk that the jury will convict on the basis of an uncharged alternative means of being "armed with a deadly weapon."[4] As explained in *Brockie*:

> Throughout the trial, the evidence consistently showed that the robber displayed what appeared to be a gun throughout the robberies. There is no indication that the trial included any discussion or claim that the robber was armed with a deadly weapon but did not display it. Thus, based on the facts in this particular case, any juror that found the robber was armed with a deadly weapon necessarily would have found that the robber displayed the weapon—the alternative means that was properly described in the charging information.

178 Wn.2d at 540. There was even less possibility of prejudice here, where Mr. Mata had been charged since the second amendment of the information with firearm enhancements on the robbery and attempted robbery counts. He was thereby on notice (if not through the means charged in counts 1 and 2) that the State intended to offer proof that he was armed.

Mr. Mata points out, however, that the "essential elements" rule applies in addition to CrR 2.1(d). In *State v. Pelkey*, 109 Wn.2d 484, 487-88, 745 P.2d 854 (1987), our Supreme Court, having considered the requirement of article I, section 22 of the Washington Constitution that the accused be adequately informed of the State's charges,

---

[3] The means provided by RCW 9A.56.200(1)(a)(ii).

[4] The means provided by RCW 9A.56.200(1)(a)(i).

15

held that the State may not amend a charge after resting its case-in-chief. It found the requirement of notice to be subject to only two narrow exceptions. "A criminal charge may not be amended after the State has rested its case-in-chief unless the amendment is to a lesser degree of the same charge or a lesser included offense. Anything else is a violation of the defendant's article 1, section 22 right." *Id.* at 491. Later cases have characterized *Pelkey* as announcing a "bright line" rule and held that where an amendment by the State after resting does not meet one of its exceptions, the defendant is not required to show prejudice. *State v. Vangerpen*, 125 Wn.2d 782, 789, 888 P.2d 1177 (1995); *State v. Markle*, 118 Wn.2d 424, 437, 823 P.2d 1101 (1992).

Here, the State's third amendment added an alternative means of committing the robberies charged in counts 1 and 2: being "armed with a firearm" in the commission of or immediate flight therefrom. Contrary to the State's contention on appeal, Mr. Mata objected to the State's request for the third amendment.[5] The State also argues that "nothing 'new'" was added to the third amended information, Br. of Resp't at 11-12, but in *Brockie*, the Supreme Court pointed out that a person may be armed with but not display a weapon, and "[t]he legislature clearly intended to treat the two alternative means of committing robbery in the first degree as distinct." 178 Wn.2d at 538.

---

[5] Mr. Mata's lawyer stated, "Your honor, the state has rested. We went to trial on these charges. I don't think that the amendment should be permitted." RP (Oct. 20, 2011) at 814. Although there was confusion about what was being added by the third amendment, the objection was sufficient.

16

Nonetheless, in an uncharged alternative means case such as this one, involving a charging document that is sufficient but an amendment that should not have been permitted, the State may show harmlessness. *Id.* at 539 n.2 (citing *State v. Bray*, 52 Wn. App. 30, 34-36, 756 P.2d 1332 (1988)); *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985) (constitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless). We find a constitutional error harmless only if convinced beyond a reasonable doubt that any reasonable jury would reach the same result absent the error. *Guloy*, 104 Wn.2d at 425.

In cases where a jury is instructed on an uncharged offense, harmlessness is most commonly shown by other instructions that define the crime in a manner that leaves only the charged alternative before the jury. *State v. Severns*, 13 Wn.2d 542, 548, 125 P.2d 659 (1942). In this case, harmlessness is shown by the fact that all of the evidence and argument was that Mr. Mata displayed a firearm when he robbed Mr. Sisneros and Mr. Kroeger. The possibility of an undisplayed firearm was never suggested. And Mr. Mata's defense was to deny any involvement in the robberies; he did not challenge the testimony of the robbery victims and other witnesses that a handgun was displayed in both robberies. *Cf. Brockie*, 178 Wn.2d at 540. Given that the only evidence offered or argued by the State was evidence of a displayed, not a concealed, firearm, the error in permitting the late amendment was harmless.

No. 30466-3-III
*State v. Mata*

II

Mr. Mata next argues that the trial court erroneously relied on RCW 9.94A.589(3) to "[impose] a consecutive sentence on Mr. Mata's Yakima County convictions with the Pierce County convictions." Br. of Appellant at 21. We conclude that the statute did not apply but that the result was still the consecutive sentencing ordered by the court.

During the sentencing hearing, the lawyers argued about the State's proposed language in section IV.A of the judgment and sentence, dealing with confinement, which reads in part as follows:

> 4.A.2 Concurrent or Consecutive:
> ☒ Consecutive With Other Sentences: Unless otherwise specified here, this sentence shall be consecutive with prior sentences.

CP at 756 (bold face omitted). Mr. Mata's lawyer argued that the court should exercise its discretion by allowing its sentence to run concurrently with the Pierce County sentences, contending that the Pierce County crimes "were part of the same crime spree," that Mr. Mata had "been in custody on this case and the other case during that time," and that the Pierce County "sentence was prior because they ended up with his body first." RP (Dec. 5, 2011) at 91, 92. The State argued that the trial court should exercise its discretion to have the sentences run consecutively, pointing out that "in a case where the court's imposing an exceptional sentence I can't imagine why you—the court would then run concurrent a separate case." *Id.* at 93.

18

We are puzzled by the positions taken by the parties on the application of RCW 9.94A.589(3) in light of the State's argument in the trial court, which is now Mr. Mata's argument on appeal, that Mr. Mata was serving community custody at the time he committed the Yakima County crimes in which case the statute does not apply.[6]

RCW 9.94A.589(3) provides:

> Subject to subsections (1) and (2) of this section, whenever a person is sentenced for a felony that was committed *while the person was not under sentence for conviction of a felony*, the sentence shall run concurrently with any felony sentence which has been imposed by any court in this or another state or by a federal court subsequent to the commission of the crime being sentenced unless the court pronouncing the current sentence expressly orders that they be served consecutively.

(Emphasis added.)

On appeal, Mr. Mata argues that because he was subject to community custody at the time he committed the Yakima crimes, he was "'[subject to] sentence for conviction of a felony'" within the meaning of Washington statutes dealing with sentencing and confinement, as decided in *State v. Roberts*, 76 Wn. App. 290, 292-93, 884 P.2d 628 (1994). Appellant's Br. at 23. On that basis, he argues, RCW 9.94A.589(3) did not apply. From this, he argues that any consecutive sentence imposed would have to be imposed as an exceptional sentence. But since the State did not ask for, nor did the court

---

[6] This is confirmed by his judgment and sentence, which found commission of a current offense while on community placement, community custody, or community supervision, which added one point to his offender score. *See* CP at 764.

19

order, exceptional consecutive sentencing, he argues that his Yakima County sentence must run concurrent to his Pierce County sentence.

The State responds with settled law that where RCW 9.94A.589(3) applies, the sentencing judge enjoys "discretion to impose either a concurrent or consecutive sentence for a crime that the defendant committed before he started to serve a felony sentence for a different crime," without finding aggravating factors that would support an exceptional sentence. *State v. King*, 149 Wn. App. 96, 101, 202 P.3d 351 (2009). It does not address *Roberts* and is now silent on whether Mr. Mata was subject to community custody at the time he committed the Yakima crimes, thereby taking him outside the operation of RCW 9.94A.589(3).

Where RCW 9.94A.589(3) does not apply, the default provision applicable to defendants in Mr. Mata's situation is RCW 9.94A.589(2)(a). It provides in relevant part that "whenever a person while under sentence for conviction of a felony commits another felony and is sentenced to another term of confinement, the latter term shall not begin until expiration of all prior terms." The result is consecutive sentencing. *See State v. Mahone*, 164 Wn. App. 146, 152, 262 P.3d 165 (2011). While the trial court might have lacked the discretion provided by RCW 9.94A.589(3) that was urged by the State, the default result is the consecutive sentencing reflected in the judgment and sentence. Any mistaken reasoning was harmless.

III

Mr. Mata next raises a conditional challenge to the the trial court's application of the free crimes doctrine as a basis for his exceptional sentence "depending upon the decision made by the appellate court on the argument contained in his brief." Br. of Appellant at 24. He does not argue that the trial court lacked a sufficient basis for applying the doctrine given the convictions and the offender score on which it based its sentencing decision but only argues that decisions on appeal might change the calculus.

A defendant's standard range sentence reaches its maximum at an offender score of "9 or more." RCW 9.94A.510. The result for a defendant being sentenced for multiple current offenses that result in an offender score greater than nine is that further increases in the offender score do not increase the standard sentence range. *State v. France*, 176 Wn. App. 463, 470, 308 P.3d 812 (2013), *review denied*, 318 P.3d 280 (2014). However, a trial court may impose an exceptional sentence if "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). The shorthand term "free crimes" is commonly used for the "current offenses going unpunished" that might justify an exceptional sentence.

Mr. Mata had an offender score of 14 prior to committing the crimes prosecuted here. In support of the exceptional sentence imposed by the court, it identified the free crimes aggravator as one reason. Correcting Mr. Mata's offender score for our reversal

21

No. 30466-3-III
*State v. Mata*

of the unlawful possession of a firearm conviction will reduce his offender score but it will still be high and well within "free crimes" aggravator territory. Reading the trial court's findings in support of its exceptional sentence as a whole, we question whether its position on an exceptional sentence will change, but that is a decision for the trial court to make in resentencing Mr. Mata.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Mata states seven.[7]

*Whether Mr. Mata's Sixth Amendment right to confront witnesses against him was violated when the recording of his police phone call was not properly authenticated.* Mr. Mata's first ground is that the audiotape of his June 15 call from jail to Ms. Barrientes was not properly authenticated. He cites the seven-part test for authentication provided by Washington case law.[8]

---

[7] On the last page of Mr. Mata's SAG, he complains of an inadequate record on appeal, mentioning "many motions" that he filed before pretrial and trial proceedings. We note that Mr. Mata appealed only the jury verdict, judgment, and sentence and has therefore brought up for appeal only those matters and any orders or rulings prejudicially affecting them. RAP 2.4(b)(1).

[8] A proper foundation requires:
"(1) It must be shown that the mechanical transcription device was capable of taking testimony. (2) It must be shown that the operator of the device was competent to operate it. (3) The authenticity and correctness of the recording must be established. (4) It must be shown that changes, additions, or deletions have not been made. (5) The manner of preservation of the record must be shown. (6) Speakers must be identified. (7) It must

22

The State called Lieutenant Gordon Costello to authenticate the recording of Mr. Mata's call. The lieutenant testified as to the nature of the jailhouse recording system, its methods of storage, the process for identifying the inmate-caller through a pin number, the methods of recording, whether changes or deletions may be shown, and he identified Mr. Mata as one of the speakers on the call. The trial court found sufficient circumstantial evidence identifying Christina Barrientes as the woman speaking during the call in the form of her partial identification of herself, her phone number, address, voice identification, and the fact that she picked up a handgun on June 16 consistent with the substance of the call.

Mr. Mata cannot raise objections to the evidence that were not raised in the trial court. RAP 2.5(a). The trial court considered his objections to recordings of several calls offered by the State and admitted only the recording of the June 15 call. We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *State v. Vreen*, 143 Wn.2d 923, 932, 26 P.3d 236 (2001). The court did not abuse its discretion in finding that the State had laid a sufficient foundation for admitting the recording.

*Whether substantial evidence supports the rapid recidivism exceptional sentence and whether the jury was provided proper guidance for its instruction.* Mr. Mata's

---

be shown that the testimony was freely and voluntarily made, without any
kind of duress."
*State v. Robinson*, 38 Wn. App. 871, 885, 691 P.2d 213 (1984) (quoting *State v. Williams*, 49 Wn.2d 354, 360, 301 P.2d 769 (1956)).

23

second ground challenges the instruction and evidence on the rapid recidivism aggravator. The jury was instructed that if it found Mr. Mata guilty of any of the charged crimes it must determine "whether the defendant committed the crime shortly after being released from incarceration." CP at 518. It answered "yes." CP at 525. Mr. Mata argues that the approximately six weeks at issue here was not "rapid," the jury was not properly guided on what constitutes a "rapid" time frame, and there was no evidence on which the jury could find that the dates on which he was released from custody and then reoffended.

Because the aggravating factor codified in RCW 9.94A.535(3)(t) is that "[t]he defendant committed the current offense shortly after being released from incarceration," "[t]his is the only fact that must be found by the jury." *State v. Williams*, 159 Wn. App. 298, 312-13, 244 P.3d 1018 (2011). The "technical term rule" requires courts to define technical words and expressions but not words and expressions that are of ordinary understanding and self-explanatory. *State v. Allen*, 101 Wn.2d 355, 358, 678 P.2d 798 (1984). The language used in the court's instruction or special verdict form on the rapid recidivism aggravator is language of ordinary understanding and self-explanatory. We also note that "[a] trial court is not required to impose an exceptional sentence merely because a jury finds an aggravating circumstance proved. Rather, in such a circumstance, the trial court may sentence the defendant to an exceptional sentence if it determines 'that

24

the facts found are substantial and compelling reasons justifying an exceptional sentence.'" *Williams*, 159 Wn. App. at 314 (quoting RCW 9.94A.537(6)).

Mr. Mata also makes a constitutional vagueness challenge to the instruction and verdict form. Where a statute does not impinge on First Amendment rights, we evaluate a vagueness challenge "by examining the statute as applied under the particular facts of the case." *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992). Statutes are presumed to be constitutional. *City of Spokane v. Vaux*, 83 Wn.2d 126, 129, 516 P.2d 209 (1973). "When a statute does not define terms alleged to be unconstitutionally vague, we 'may look to existing law, ordinary usage, and the general purpose of the statute to determine whether the statute meets constitutional requirements of clarity.'" *Williams*, 159 Wn. App. at 319 (internal quotation marks omitted) (quoting *State v. Hunt*, 75 Wn. App. 795, 801, 880 P.2d 96 (1994)).

As applied to Mr. Mata, RCW 9.94A.535(3)(t) is not vague. The evidence presented to the jury was that Mr. Mata was making arrangements to acquire the handgun used to commit the robberies while in jail. Committing a crime within six weeks of release fits well within any common understanding of "shortly after."

Finally, the State presented evidence on the time frame involved in a bifurcated proceeding on the rapid recidivism issue, conducted after the jury had returned its verdicts of guilty. Lieutenant Costello testified that Mr. Mata had been incarcerated in June 2009 for "a guilty finding on a charge of offender accountability," that "[h]e was

25

released on 6-20-2009 at 1939 [hours]," and that the number of days between his June 20 release and July 28 was "38 days." RP (Oct. 24, 2011) at 1066-68. The jury had been presented with substantial evidence during the trial that the date of the crimes charged was July 28.

*Whether Mr. Mata had adequate notice of the prohibition against firearm possession.* Mr. Mata's third ground relates to the unlawful possession conviction that we reverse. It is moot.

*The court erred in using a single definition of "firearm" for each charge; it ignored the fact that the alleged weapon had never been tested or shown to be able to fire a projectile; defense counsel was ineffective for not hiring experts on the issue of identification and made mistakes during pretrial motions; and the prosecutor committed misconduct in opening statements and during trial by violating the court's pretrial order about "crime spree" evidence.* Mr. Mata's fourth, fifth, sixth, and seventh grounds are all insufficiently supported under RAP 10.3(a)(6). They lack citation to relevant portions of the record, identification of the claimed error, supporting legal authority, and reasoned argument. We refuse to consider them.

We reverse Mr. Mata's conviction of first degree unlawful possession of a firearm

No. 30466-3-III
*State v. Mata*

and remand to the sentencing court for a recalculation of the offender score and

resentencing.

Siddoway, A.C.J.

WE CONCUR:

Brown, J.

Kulik, J.P.T.